IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Catawba Riverkeeper Foundation, Inc. ) | |
| ) | C/A No.: 3:12-cv-124-JFA |
| Plaintiff, ) | |
| vs. ) | **ORDER** |
| South Carolina Electric and Gas ) Company, a subsidiary of SCANA ) Corporation, ) | |
| Defendant. ) | |

This matter comes before the court pursuant to the Defendant's motion to dismiss (ECF No. 12). The parties have fully briefed the issues, and the court also invited oral argument. For the reasons stated below, the court hereby denies the Defendant's motion to dismiss.

## I.  FACTUAL AND PROCEDURAL HISTORY

Catawba Riverkeeper Foundation, Inc., (Catawba) filed this action alleging that South Carolina Electric and Gas Company (SCE&G) is polluting the Wateree River without a permit in violation of the South Carolina Pollution Control Act (PCA). Catawba seeks both declaratory and injunctive relief. Catawba filed the action pursuant to *Georgetown County League of Women Voters v. Smith Land Co., Inc.*, 393 S.C. 350, 713 S.E.2d 287 (2011), which recognized a private right of action under the PCA.

The allegations in this case concern the Wateree Station, a coal-fired generating plant in southern Richland County owned by SCE&G. The plant is adjacent to the

1

Wateree River, and wastewater containing arsenic from two ash ponds is ultimately discharged into the river. The large ash ponds are unlined ponds separated from the river by earthen berms. The Wateree station obtained a National Pollutant Discharge Elimination System (NPDES) permit in 2010 that authorizes it to route wastewater to Ash Pond 1 and then to Ash Pond 2, where it is discharged into the Wateree River. The permit contains calculations regarding the amount of arsenic expected to be present in the discharges from Ash Pond 2. These calculations also consider potential groundwater contamination.

Arsenic levels had been a concern of DHEC at this site in the past. In 2001, SCE&G and DHEC entered a Mixing Zone Consent Agreement that required installation of groundwater wells for routine sampling and corrective measures where specified amounts were detected. In 2011, SCE&G signed a Memorandum of Agreement (MOA) outlining a proposal to upgrade its fly ash and bottom ash handling systems to limit the amount of ash that was released and that would make its way into the Wateree River.

Catawba filed the present action on January 12, 2012, and SCE&G responded with the instant motion.

## II.   LEGAL STANDARD

   *a.  12(b)(1) – Standing*

Article III of the Constitution limits the jurisdiction of the federal courts to the adjudication of "cases" and "controversies." Standing, the threshold requirement, is "perhaps the most important" condition of standing. *Allen v. Wright*, 468 U.S. 737, 750 (1984). "The standing inquiry ensures that a plaintiff has a sufficient personal stake in a

dispute to render judicial resolution appropriate." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 153 (4th Cir. 2000) (en banc).

To have standing, a plaintiff must establish three well-known elements: (1) that plaintiff has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, (1992)). Although plaintiffs bear the burden of proving standing requirements to the same extent as any other element of their case, on a motion to dismiss, the "general factual allegations of injury resulting from the defendant's conduct may suffice" to demonstrate standing. *Lujan*, 504 U.S. at 561.

The Supreme Court has recognized that an association may have standing to assert the claims of its members even where it has suffered no injury from the challenged activity. *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 342 (1977). An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests it seeks to protect are germane to their organization's purpose, and neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit. *Id.*

   b. *12(b)(6) Motion to Dismiss*

When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff.

*Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). The United States Supreme Court has stated, however, that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). Accordingly, Plaintiff must put forth claims that cross "the line from conceivable to plausible." *Id.* at 1950–51 (internal quotation omitted).

### III. DISCUSSION

#### a. 12(b)(1) Standing

Catawba argues that it has standing in its own right, based on the denial of the corporation's opportunity to comment on a PCA permit. Catawba also argues that it has standing through its members, based on both the denial of an opportunity to comment on a PCA permit and the interference with the recreational use and aesthetic enjoyment of the portion of the Wateree River near the plant.

SCE&G first argues that Catawba does not have standing in its own right because the Wateree River is not applicable to the organizations's purpose of protecting the Catawba River. SCE&G relies on Catawba's articles of incorporation, and notes that they do not indicate concerns about the Wateree River, only areas upstream—the Catawba River area including Lake Wylie and Lake Norman. Accordingly, SCE&G concludes that the affected areas are all downstream of areas with which Catawba is concerned. Catawba responds that its area of concern is the Catawba watershed, a broader area that includes the Wateree River. Catawba indicates that its website includes concerns about the Wateree River, and the Complaint details numerous activities in the Wateree region.

Catawba also argues it was harmed when it was not allowed to comment at meetings because SCE&G did not follow the PCA procedures and did not hold any meetings. Catawba asserts that SCE&G should have acquired a permit under the PCA which would have allowed it—through its members—to comment publicly. Catawba advances this argument on behalf of itself as well as its members. SCE&G responds that it has the proper permits and contends that Catawba did not have the right to comment on either the 2001 Consent Agreement or the 2011 MOA. Moreover, SCE&G contends that the PCA does not require notice and comment for all permits, and those agreements are permits that do not require public notice and comment. SCE&G also notes that Catawba did comment at the appropriate time for the NPDES permit.

SCE&G also challenges Catawba's contention that its members have standing based on an interference with their recreational use and aesthetic enjoyment of the area.

5

SCE&G argues that the members of Catawba have not suffered an injury in fact because they have made only general allegations "in the vicinity of and downstream from" the Wateree Station. Defendant relies on cases finding that a plaintiff lacked standing where the alleged harm was too generalized. In *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885–88 (1990), the Court found that claims of recreational use and aesthetic enjoyment of lands "in the vicinity" of the land at issue were insufficient to create standing. In *Summers v. Earth Island Institute*, 555 U.S. 488, 495 (2009), the Court found that the plaintiff lacked standing to challenge timber sales pursuant to an alleged recreational interest in national forests because the plaintiff did not allege which particular projects would interfere with that interest. *Id.* at 495. The Court emphasized that the plaintiff did not indicate any firm intention to visit a location that would be affected by the particular regulations. *Id.* at 496. In *Pollack v. U.S. Dept. of Justice.*, 577 F.3d 736 (7th Cir. 2009), the plaintiff claimed that he suffered aesthetic harm from a gun range because he enjoyed watching birds in the Great Lakes Watershed. *Id.* at 743. The court found that plaintiff lacked standing because the allegations related to vast territory and the plaintiff never claimed he visited the particular park with the gun range or watched birds in that area. *Id.*

    Plaintiff argues that the allegations of the complaint are specific enough to meet the standing tests outlined in previous cases. The Supreme Court has held that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons "for whom the aesthetic and recreational values of the area will be lessened" by the challenged activity. *Sierra Club v. Morton*, 405 U.S. 727, 735

6

(1972). For example, in *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167 (2000), the Court found that a member of the group had standing where he lived a half-mile from Laidlaw's facility, but he did not fish, camp, swim, or picnic in the area near the facility, as he did as a teenager, because he was concerned that the water was polluted by Laidlaw's discharges. *Id.* at 181–82. In a similar case brought under a federal statute, *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149 (4th Cir. 2000) (en banc), the court found that a member of the organization had standing because he owned property that was in "close proximity to Gaston Cooper." *Id.* at 157. Thus, the claims regarding future use were not mere conjecture about visiting "some day" but concrete plans that would be affected by the pollution. *Id.* at 159 (citing *Lujan*, 504 U.S. at 564).

Here, plaintiff argues that its members meet the requirements for standing because Catawba alleges that its members recreate, fish, and hunt on the Wateree River, and visit the Congaree National Park, which is downstream from the plant. Catawba has also included affidavits of several of their members outlining how they use the area to fish, canoe, kayak and explore. (*See* Opp. Mot. Summ. J., Ex. B, ECF No. 17.) They indicate that they have used the area and plan to continue to do so, but their use and enjoyment is lessened by the pollution. (*Id.*) Though not all live in the area, all indicate that they make use of the area. (*Id.*)

Finally, Defendant asserts that it is addressing any deficiencies pursuant to the MOA and that therefore the claim is not redressable by a private suit such as the present one. *In re Oil Spill by Oil Rig Deepwater Horizon*, 792 F. Supp. 2d 926, 930 (E.D. La.

2011) ("An injury is not redressable by a citizen suit when the injury is already being redressed."). Catawba argues that the MOA does not address all of its allegations, such as remediation of the groundwater, that the MOA is not binding, and that at this stage of the case there is no proof of compliance with its terms.

The court finds that the plaintiff has standing to pursue its claims. First, the court is not persuaded that the Catawba River and Catawba Watershed distinction justifies dismissal. While the articles of incorporation indicate a narrower focus on areas upstream from the plant, the activities of the plaintiff indicate a concern with the entire watershed. Catawba comments on permits impacting the Wateree River and its website outlines its focus on the area. The Waterkeeper Alliance, Inc., recognized Catawba as the Riverkeeper for the Catawba-Wateree watershed. DHEC also includes the Wateree River as a part of the Catawba River Basin. As a result, Catawba has indicated a valid interest in the Wateree River region.

The court finds that the allegations are sufficient to state a claim for a violation of the PCA, both for Catawba in its own right and on behalf of its members. Catawba alleges that SCE&G has contaminated the groundwater and that the berms occasionally leak. As a result, these alleged discharges would not appear to be within the scope of the NPDES permit. The use of agreements such as the MOA, entered into without public comment, rather than adherence to the PCA procedures constitutes the potential violation. Finally, to deny standing on this claim would require a more searching inquiry into the relevant regulatory law and factual allegations than would be appropriate at this early stage of the proceedings.

Catawba also possess standing on behalf of its members for the alleged violation of their recreational use and aesthetic enjoyment of the Wateree River. The allegations in the Complaint, which plaintiff has since supplemented with declarations by particular members, track the allegations made in similar cases where the Fourth Circuit and Supreme Court have found standing. *See Laidlaw*, 528 U.S. at 181–82; *Gaston Copper Recycling Corp.*, 204 F.3d at 157. The members of Catawba indicate that they have used the area in the past to hunt, fish, and recreate and intend to return in the future, but the contamination has lessened their enjoyment. The members of plaintiff also indicate that they make use of the particular portion of the river adjacent to and downstream from the Wateree Station, and have not made the type of generalized claims involving a widespread area where courts have denied standing. *See Summer*, 555 U.S. at 495; *Lujan*, 497 U.S. at 885–88. Accordingly, the court finds that Catawba has standing to assert the recreational and aesthetic injuries of its members as well.

Finally, Catawba does not lack standing because the claims have already been redressed. While SCE&G argues that the claim is not redressable by the present suit, the MOA on which it relies is not binding, and as noted above, may not authorize all of the alleged discharges.

### b. 12(b)(6) Motion to Dismiss

SCE&G also argues that Catawba fails to state a claim upon which relief may be granted. SCE&G argues that this action is essentially a collateral attack on the NPDES permit because Catawba disagrees with the content of that permit. SCE&G notes that procedures by which NPDES permits are issued, outlined in S.C. Reg. 61-9, require

9

public notice and comment, and provide for judicial review. While Catawba participated in the public notice and comment, it did not request review by the DHEC Board. SCE&G thus concludes that Catawba has failed to exhaust its administrative remedies, and the present suit is barred. SCE&G also argues that a challenge to the Consent Agreement (2001) is untimely, and were it even allowed, it should have been brought within the time period specified in S.C. Code § 44-1-60, which has now elapsed. Those claims, SCE&G concludes, are barred for this alternative reason as well.

Catawba argues that SCE&G mischaracterizes its Complaint, and that it is not challenging the NPDES permit. Rather, Catawba asserts that SCE&G is polluting in violation of the PCA. In other words, while the NPDES permit provides for some pollution from the outfall at Ash Pond 2, Catawba is alleging pollution at numerous points other than that outfall, such as the groundwater, and concludes that SCE&G is polluting without a permit in violation of S.C. Code § 48-1-250. Catawba responds that the exhaustion of remedies arguments are misplaced because it is not challenging an agency action. Similarly, Catawba argues that it is not challenging the Consent Agreement and the MOA, it is merely noting that those documents do not constitute permits, and do not justify SCE&G's actions.

The court finds that the Complaint states a claim for relief and hereby denies the motion to dismiss under Rule 12(b)(6). As noted above in the context of the procedural standing arguments, Catawba alleges that the NPDES permit does not authorize all of the potential discharges, and that SCE&G failed to obtain additional required permits. Accordingly, whether or not Catawba has exhausted the administrative procedures

10

applicable to the NPDES permit would not bar the suit. The argument is also similar to the standing argument in that it calls for a determination of issues going towards the merits because it involves factual allegations regarding pollution. The court declines to make such an inquiry at this stage and finds that the allegations of the Complaint state a plausible claim for relief.

## IV.  CONCLUSION

For the reasons discussed above, the court denies the Defendant's motion to dismiss.

IT IS SO ORDERED.

May 31, 2012                                                Joseph F. Anderson, Jr.
Columbia, South Carolina                          United States District Judge

11